UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABRAHAM SOLIS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CLEAN HARBORS, INC., et al.,<br><br>　　　　Defendants. | Case No. 20-cv-02660-AGT<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 55 |

　　　　Defendants Aerotek, Inc. and Clean Harbors Industrial Services, Inc. ("Clean Harbors"), as the prevailing parties in this negligence action, move for an award of $75,000 in attorneys' fees from plaintiff Abraham Solis. Dkt. 55, Mot. Solis opposes, arguing that the contractual attorneys' fees provision defendants rely on is unenforceable and inapplicable, and the requested amount of fees is unreasonable. Dkt. 56, Opp. For the reasons set forth below, the Court grants defendants' motion.

**I.    BACKGROUND**

　　　　On December 13, 2018, Solis signed a three-page employment agreement with Aerotek, a staffing agency, for a temporary work assignment with Aerotek's client, Clean Harbors. *See* Dkt. 36-4, Employment Agreement.[1] The Employment Agreement, which was drafted by Aerotek, stated that Solis was an employee of Aerotek, not Clean Harbors, and that his employment with Aerotek would be "co-extensive" with his Clean Harbors assignment—that is, his Aerotek employment would begin on the first day of his Clean Harbors assignment, and end when his

---

[1] The Employment Agreement specifically identifies "Clean Harbors Environmental Services Inc." as the "Client." Employment Agreement at 1. Clean Harbors Environmental Services is an affiliate of defendant Clean Harbors. Mot. at 10 n.3. Neither entity is a signatory to the Employment Agreement.

assignment was ended by Clean Harbors or otherwise. *Id.* §§ 2, 14. The Employment further provided that Aerotek would supply workers' compensation coverage "for things such as on-the-job injuries . . . incurred while on Assignment for Aerotek[], and to the extent permitted by law, you agree to look solely to Aerotek, Inc. and/or its insurer for damages and/or expenses for any such claims." *Id.* § 17. It also contained an attorneys' fees provisions as follows:

> **18. <u>Attorneys' Fees</u>** - To the extent permitted by law, you agree that in the event of any dispute or claims: (a) arising out of or relating in any way to your employment or relationship with Aerotek, Inc.; or (b) seeking to enforce the obligations contained in this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and all costs relating to the dispute or claims and any process through which such a dispute or claims may be resolved.

*Id.* § 18.

On January 15, 2019, the first day of his Clean Harbors assignment, Solis's right thumb was crushed while he was assisting with machine maintenance at Clean Harbors's facility. Solis was transported to the hospital where he underwent emergency surgery and ultimately lost his right thumb. He did not return to Clean Harbors after the incident.

Solis promptly filed a workers' compensation claim with Aerotek for his on-the-job injury, and he began receiving workers' compensation benefits through Aerotek on January 18, 2019. Solis then filed a single-count negligence complaint against Aerotek and Clean Harbors in California state court, seeking further recovery for the same injury. Defendants removed the case to this Court based on diversity jurisdiction. Following limited discovery, Aerotek and Clean Harbors moved for summary judgment, arguing that California's Workers' Compensation Act provided Solis's exclusive remedy for his workplace injury. The Court granted defendants' motion—finding that they were Solis's joint employers for workers' compensation purposes and, consequently, both statutorily immune from tort liability for Solis's workplace injury—and entered judgment in their favor. Dkts. 52, 53. Aerotek and Clean Harbors now move for attorneys' fees pursuant to the prevailing party attorneys' fees provision in Solis's Employment Agreement with Aerotek.

## II. DISCUSSION

Aerotek and Clean Harbors seek $75,000 in attorneys' fees which they collectively

incurred in successfully defending against Solis's negligence claim. They argue they are both entitled to enforce the Employment Agreement's fees provision—Aerotek as a contracting party and Clean Harbors as a third-party beneficiary—and that the requested award is reasonable. Solis opposes defendants' motion on the following grounds: (1) the attorneys' fees provision at issue is not enforceable, and (2) even if it is, it does not apply as to Clean Harbors, a nonsignatory to the Employment Agreement, and (3) even if it does, the amount of fees requested is unreasonable.[2]

### A. Enforceability of the Fees Provision

Solis contends the attorneys' fees provision at issue is unenforceable because it is unconscionable, and because Aerotek materially breached the Employment Agreement by failing to pay Solis for his work. Neither argument is persuasive.

#### 1. Unconscionability

Under California law, a court "may refuse to enforce a provision of a contract if it finds that the provision was 'unconscionable at the time it was made.'" *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (quoting Cal. Civ. Code § 1670.5(a)). Unconscionability has "both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015). Both procedural and substantive unconscionability must be shown in order for a provision to be unconscionable, but they need not be present to the same degree: "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "The overarching unconscionability question is whether an agreement is imposed in such an unfair fashion and so unfairly one-sided that it should not be enforced." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 124 (2019). The party asserting unconscionability has the burden of proving it. *Id.* at 126.

---

[2] The parties agree that California law governs these inquiries. *See Klopfenstein v. Pargeter*, 597 F.2d 150, 152 (9th Cir. 1979) ("In a diversity action the question of attorney's fees is governed by state law.").

3

Solis claims the fees provision here is procedurally unconscionable because it is part of an adhesion contract. "It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability." *Serpa v. California Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013). While the Court agrees with Solis that the Employment Agreement is adhesive—it is a standardized form contract drafted by Aerotek, the party of superior bargaining power, and offered to Solis on a take-it-or-leave-it basis—"this adhesive aspect of an agreement is not dispositive." *Id.* Rather, "[w]hen, as here, there is no other indication of oppression or surprise, 'the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.'"[3] *Id.* (citation omitted).

Solis argues that the fees provision is substantively unconscionable because it is "one-sided" and "does not constitute a 'mutual' attorney fee shifting provision." Opp. at 12. This contention lacks merit. To start, the fees provision is explicitly mutual, providing that "the prevailing party shall be entitled to recover reasonable attorneys' fees" relating to a covered dispute. *See* Employment Agreement § 18. Thus, as defendants point out, Solis "presumably could have sought fees in this matter if he was the prevailing party." Dkt. 57, Reply at 9. Further, even if Solis were correct that had he been "meritorious in his suit against Clean Harbors, he would never be able to recover a dime of attorney fees against them," Opp. at 11, such an outcome would still not render the fees provision substantively unconscionable. Under California law, "attorney's fees provisions need not be reciprocal with regard to non-contract claims, so the fact that a third party beneficiary [like Clean Harbors, *see infra* Section II.B.2] cannot be liable for

---

[3] Solis has not shown any oppression beyond what is inherent in an adhesive employment agreement. *See Perry v. MLB Advanced Media, L.P.*, 2018 WL 5861307, at *5 (C.D. Cal. May 30, 2018) ("The facts here—a take-it-or-leave-it provision combined with unequal bargaining power and sophistication—do not 'demonstrate any oppression beyond what is inherent in any adhesion contract.'") (citation omitted). Nor has he demonstrated surprise, which occurs "where the allegedly unconscionable provision is hidden within a prolix printed form." *OTO*, 8 Cal. 5th at 126. The Employment Agreement is three pages long and contains 20 numbered paragraphs. The attorneys' fees provision appears on the final page of the agreement, directly above the signature box where Solis signed and accepted its terms, in the same size font as the other provisions and with the bold and underlined title, "Attorneys' Fees."

4

attorney's fees on such claims presents no bar to allowing a third party beneficiary to collect such fees." *Hom v. Petrou*, 67 Cal. App. 5th 459, 469–70 (2021), *review denied* (Oct. 20, 2021).

Solis has identified no other aspect of the contractual fees provision (or the Employment Agreement in general) that supports a finding of substantive unconscionability. *See Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012) ("A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to *shock the conscience*.'") (citation omitted; emphasis added). Nor has he cited any case where the court held that a mutual provision awarding attorneys' fees to the prevailing party was unconscionable under California law.

Because Solis has not shown any amount of substantive unconscionability, let alone a high degree, the fees provision at issue is enforceable. *See Serpa*, 215 Cal. App. 4th at 704.

### 2. Material Breach

Solis alternatively argues that he has been discharged from his obligations under the fees provision because "Aerotek materially breached the [Employment] Agreement when it failed to pay [him] for his work as required by section 4." Opp. at 6; *see Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011) ("When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract."). Aerotek counters that Solis failed to perform a condition precedent to payment under the Employment Agreement—namely, he failed to submit his time records to Aerotek as required by Section 3—and as such, Aerotek has not breached in the first instance. *See Consol. World Invs., Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1992) ("[W]here defendant's duty to perform under the contract is conditioned on the happening of some event, the plaintiff must prove the event transpired."). Aerotek further argues that even if its failure to pay Solis did amount to a breach, the alleged breach was not material so as to excuse Solis from all other obligations under the Employment Agreement. The Court agrees with Aerotek.

Section 3 of the Employment Agreement, titled "Reporting of Hours," required Solis "to submit completed time records to the Aerotek[] office immediately following completion of [his] work week, but in no event later than 10:00 a.m. on Monday of each week, written in ink and

5

approved and verified by a Client supervisor, indicating the number of hours worked." Employment Agreement § 3. Section 4, in turn, required Aerotek to "pay [Solis] weekly on Friday . . . for all hours worked (*as reflected on time records*)." *Id.* § 4 (emphasis added). While Solis attests that Aerotek never paid him for his work at Clean Harbors on January 15, 2019, he does not refute that he never submitted a time record to Aerotek reflecting his hours worked that day. *See* Dkt. 57-1, Petersen Decl., ¶ 3 ("According to Aerotek's payroll records, [Solis] did not submit a completed time record indicating the number of hours he worked at Clean Harbors on January 15, 2019, either at the end of the work week/pay period or at any time thereafter."). More importantly, even if Aerotek's failure to pay Solis for his unsubmitted time did breach the Employment Agreement, it did not relieve Solis of his obligation to pay attorneys' fees because the alleged breach was not material. "The general rule is that if the breach is a material breach, it may give grounds for the non-breaching party to cancel the contract, but if the breach is a partial breach, the non-breaching party's remedy is for damages." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1289 n.12 (9th Cir. 2009) (internal citations omitted). Beyond conclusory assertions, Solis makes no effort to establish that Aerotek's purported breach was material. *See Sackett v. Spindler*, 248 Cal. App. 2d 220, 229 (1967) (listing multiple factors courts consider when "determining the materiality" of a breach, including "the extent to which the injured party may be adequately compensated in damages for lack of complete performance"). The Court thus rejects Solis's argument.

### B.     Defendants' Entitlement to Fees

Solis next argues that the attorneys' fees provision is inapplicable to this negligence case, which he confusingly refers to as "a third-party case against Clean Harbors." Opp. at 9. Again, the Court is not persuaded. In California, "parties to a contract are free to agree that one or more of them shall recover their attorney fees if they prevail on a tort or other noncontract claim, but the right to recover those fees depends solely on the contractual language." *Brown Bark III, L.P. v. Haver*, 219 Cal. App. 4th 809, 820 (2013). Consequently, the question of whether Aerotek and Clean Harbors are entitled to attorneys' fees on Solis's negligence claim is governed by the language of the Employment Agreement's attorneys' fees provision. *Exxess Electronixx v. Heger*

6

*Realty Corp.*, 64 Cal. App. 4th 698, 708 (1998). In particular, the Court must "examin[e] the fees provision to see (1) if it covers non-contract claims, (2) whether [Aerotek and Clean Harbors] may claim the benefit of it, and (3) whether [Aerotek and Clean Harbors] are prevailing parties within its meaning." *Petrou*, 67 Cal. App. 5th at 466 (citing *Brown Bark*, 219 Cal. App. 4th at 827–28). There is no dispute that defendants are the prevailing parties, so the Court focuses its analysis on the first and second steps of this inquiry.

### 1. Scope of the Fees Provision

Step one is easily satisfied, as the attorneys' fees provision in the Employment Agreement is broad enough to apply to Solis's negligence claim against Aerotek and Clean Harbors.[4] The provision provides for attorneys' fees to the prevailing party "in the event of any dispute or claims . . . arising out of or relating in any way to [Solis's] employment or relationship with Aerotek, [or] seeking to enforce the obligations contained in this [Employment] Agreement." Employment Agreement § 18. California courts routinely find contractual fees provisions "sufficiently broad to reach noncontractual claims when they apply to actions 'arising out of' or 'relating to' a contract or its subject matter, or to 'any dispute under' an agreement." *Orien v. Lutz*, 16 Cal. App. 5th 957, 964–65 (2017) (collecting cases). Solis's negligence claim alleged in the complaint, premised on Aerotek's and Clean Harbors's "duty to provide a safe working place for [Solis], and to ensure that he was not placed in any exceptionally dangerous positions" during his Clean Harbors assignment, *see* Compl. ¶¶ 28–29, clearly relates to Solis's "employment or relationship with Aerotek." As noted, Aerotek hired Solis for the specific purpose of assigning him to work for Clean Harbors, *see* Employment Agreement § 1, and it is undisputed that Aerotek was Solis's employer at the time of his workplace injury underlying this lawsuit.

---

[4] Despite expressly asserting a negligence cause of action against both Aerotek and Clean Harbors, *see* Compl. ¶¶ 27–34, Solis now attempts to characterize this lawsuit as a "third-party [negligence] case against Clean Harbors," Opp. at 9. According to Solis, he "pursued what was in effect a third-party claim against Clean Harbors" and Aerotek "was a necessary party in the complaint for information purposes" only. *Id.* at 5. As defendants correctly note, however, this was not a "third-party" negligence action against Clean Harbors; rather, this action involved a direct claim of negligence against Clean Harbors *and* Aerotek.

7

### 2.     Right to Enforce the Fees Provision

The second step of the inquiry—whether Aerotek and Clean Harbors may claim the benefit of the fees provision—is also satisfied here. There is no question that Aerotek, as a direct party to the Employment Agreement, is contractually entitled to collect its fees pursuant to the fees provision. Rather, the parties dispute whether Clean Harbors, as a nonsignatory to the Employment Agreement, can also recover its fees under the contractual fees provision. Defendants argue that the answer is yes, and the Court agrees.

Under California law, "[a] nonsignatory is entitled to bring an action to enforce a contract as a third party beneficiary if the nonsignatory establishes that it was likely to benefit from the contract, that a motivating purpose of the contracting parties was to provide a benefit to the third party, and that permitting the third party to enforce the contract against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Petrou*, 67 Cal. App. 5th at 471 (citing *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 821 (2019)). Here, there is little doubt that Clean Harbors qualifies as a third-party beneficiary of the Employment Agreement as a whole. Clean Harbors is expressly referenced in the first sentence of the Employment Agreement, where it is defined as the "Client" of Aerotek. Employment Agreement at 1. That sentence confirms that Aerotek hired Solis to work at and for Clean Harbors for a temporary period, "to perform such duties and for such hours of work as may be assigned to [him] during [the assignment]." *Id.* The Employment Agreement then specifies that Solis's employment with Aerotek was "subject to final approval" by Clean Harbors and would be "co-extensive" with and no greater than his assignment at Clean Harbors. *Id.* §§ 1, 2.

Numerous other provisions in the Employment Agreement likewise manifest a clear intent by the contracting parties to benefit Clean Harbors (the "Client"). *See, e.g.*, *id.* § 8 ("You [Solis] agree to indemnify the Client . . . for any and all claims, matters, suits, or other liabilities that arise directly or indirectly as a result of your breach of Section 7 [protecting Client's confidential information] or Section 8 [abiding by Client's information security policies] of this Agreement."); § 9 ("You agree that you will disclose and assign full and absolute right, title, and interest to the Client of any and all inventions, improvements, or discoveries made by you . . . during the tenure

of this agreement . . ."); § 14 ("you are not eligible for any benefit programs that may be provided by Client during your Assignment"); § 15 ("you agree to be bound by any applicable rules, regulations or policies established by the Client wherever you perform services under this Agreement.  You recognize and agree that you . . . will look solely to Aerotek[] for all employee benefits in connection with your employment under this Agreement.  You hereby waive any right you have or may have against the Client for benefits arising out of or resulting from employment hereunder . . .").  Of particular note, the Employment Agreement's "Limitation of Liability" provision, which appears directly above the attorneys' fees provision, elucidates that one of the contracting parties' motivating purposes was to protect Clean Harbors from precisely the type of claim Solis asserted against it in this lawsuit:

> **17. <u>Limitation of Liability</u>** - To the extent permitted by law, you . . . waive any and all rights you have, or may have, to claim or assert a claim, suit, action or demand of any kind, nature or description, including without limitation, claims, suits, actions or demands for personal injury or death whether arising in tort, contract or otherwise, *against Client or Client's customers, agents, officers, directors, or employees*, resulting from or arising directly or indirectly out of your employment with Aerotek, Inc. . . . You recognize and agree that Aerotek, Inc. provides workers' compensation coverage for such things as on-the-job injuries or occupational diseases incurred while on Assignment for Aerotek, Inc., and to the extent permitted by law, you agree to look solely to Aerotek, Inc. and/or its insurer for damages and/or expenses for any such claims, suits, actions, or demands relating to bodily injury, illness, or death incurred while on Assignment. In furtherance of the foregoing and in recognition that any work related injuries which might be sustained by you are covered by state Workers' Compensation statutes, and to avoid the circumvention of such state statutes which may result from suits against the Client based on the same injury or injuries, and to the extent permitted by law, YOU HEREBY WAIVE AND FOREVER RELEASE ANY RIGHTS YOU MIGHT HAVE to make claims or bring suit *against the Client* for damages based upon injuries which are covered under such Workers' Compensation statutes. . . .

*Id.* § 17 (italics added).  Given the detail with which the Employment Agreement specifies the rights and benefits of Clean Harbors, the Court finds that permitting Clean Harbors to obtain benefits under the Employment Agreement is consistent with the parties' expectations.

Turning to the language of the fees provision itself, the Court further finds that one of the benefits to which Clean Harbors is entitled under the Employment Agreement is the right to collect attorneys' fees in an action such as this one.  The fees provision at issue here states, "in the

9

event of *any dispute* or claims: (a) arising out of or relating in any way to [Solis's] employment or relationship with Aerotek, Inc.; or (b) seeking to enforce the obligations contained in this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and all costs relating to the dispute or claims and any process through which such a dispute or claims may be resolved." Employment Agreement § 18 (emphasis added). The phrase "any dispute" is broad and is not limited to disputes between the contracting parties. *See Petrou*, 67 Cal. App. 5th at 472 (examining similar fees provision and holding that the phrase "any dispute" is "more expansive than other phrases that courts have held extend only to contracting parties, such as 'in the event it becomes necessary for either party to enforce the provisions of this Agreement' or in 'any litigation between the parties hereto to enforce any provision of this Agreement'") (internal citations omitted). The fees provision here is also broader than the provision entitling a prevailing party to fees "[i]n the event of any action or proceeding brought by either party against the other under this [Agreement]," which the court in *Real Prop. Servs. Corp. v. City of Pasadena*, 25 Cal. App. 4th 375, 377 (1994), held would allow third-party beneficiaries to collect fees. And it is at least as broad as the provision, "[i]f a court action is brought, prevailing party to be awarded attorneys['] fees and collection costs," which *Loduca v. Polyzos*, 153 Cal. App. 4th 334, 343 (2007), held allowed a third-party beneficiary to collect their fees. These decisions support the conclusion that Clean Harbors is entitled to collect its attorneys' fees as a third-party beneficiary to the Employment Agreement and its broad attorneys' fees provision.

In sum, the Court finds that defendants, the prevailing parties in this action, are both contractually entitled to attorneys' fees under the Employment Agreement's fees provision.

### C. Reasonableness of Requested Fees

After a court decides that a contract provides for attorneys' fees, the court must determine the reasonableness of the requested fees. If the contract does not specify a particular sum, "it is within the trial court's discretion to determine what constitutes reasonable attorneys' fees." *Niederer v. Ferreira*, 189 Cal. App. 3d 1485, 1507 (1987). In California, this inquiry "ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000). "The reasonable

hourly rate is that prevailing in the community for similar work." *Id.* "The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." *Id.* (citing *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977) (in bank)). "When apprised of the pertinent facts, the trial court may rely on its own experience and knowledge in determining the reasonable value of the attorney's services." *Niederer*, 189 Cal. App. 3d at 1507.

Here, defendants request $75,000 in attorneys' fees from Solis, which they note is less than half of the approximately $160,000 in fees actually incurred.[5] Mot. at 7. In support of their requested fees, defendants submit the declaration of their counsel, Christopher Wood of Husch Blackwell LLP, attesting to the rates and hours worked by specific attorneys and attaching redacted invoices reflecting those hours. *See* Dkt. 55-1, Wood Decl. Pursuant to the Court's order, defendants also submitted unredacted invoices for *in camera* review. *See* Dkts. 58 & 59. Defendants' submissions are sufficient to support their request for fees. The Court is satisfied that the hourly rates of the attorneys and staff involved—ranging from $375 to $460 for partners and senior counsel, $300 to $310 for associates, and $195 to $215 for paralegals, *see* Wood Decl. ¶¶ 5–12, 18—are in line with those charged in the local legal community. *See Cisneros v. Vangilder*, 2021 WL 366917, at *8 (N.D. Cal. Feb. 3, 2021) (finding hourly rates of $425 to $600 for partners; $395 to $425 for senior associates; $395 for junior associates; and $200 for paralegals reasonable and "consistent with prevailing rates in this district"); *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (holding that the district court may rely on its own familiarity with the local legal market to evaluate and set a reasonable hourly rate).

Likewise, defense counsel's declaration and the corresponding invoices are detailed and demonstrate that the hours expended were reasonable given the complexity, duration, and nature of this litigation. *See Steiny & Co., Inc. v. California Elec. Supply Co.*, 79 Cal. App. 4th 285, 293 (2000) ("An attorney's testimony as to the numbers of hours worked is sufficient evidence to

---

[5] Defendants also note that Clean Harbors was entitled to have its defense costs paid by Aerotek pursuant to a separate agreement and therefore Aerotek "has borne and paid all fees and expenses associated with this litigation." Mot. at 9 n.2.

11

support an award of attorney fees, even in the absence of detailed time records."). Finally, it bears noting that the hours expended (totaling 486.50) reflect time "actually billed to Aerotek and which Aerotek has either paid or agreed to pay" in full. *See* Wood Decl. ¶¶ 3, 14–15. Aerotek's payment (of behalf of itself and Clean Harbors) reflects that it understood the hours expended to be reasonable and necessary to the successful defense of this litigation. That defendants seek to recover less than half the amount of fees actually incurred does not, as Solis suggests, render their request unreasonable.

### III.   CONCLUSION

For the reasons set forth above, the Court grants defendants' motion for attorneys' fees. Defendants are awarded attorneys' fees in the amount of $75,000.

**IT IS SO ORDERED.**

Dated: March 31, 2022

ALEX G. TSE
United States Magistrate Judge